**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KHALIUNSUREN GANBOLD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2260-G** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Khaliunsuren Ganbold, a citizen of Mongolia proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging her detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Charles Goodwin referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 8), Respondents timely filed a Response to the Petition. (Doc. 11). Petitioner timely filed a reply. (Doc. 12). For the reasons set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and **released from custody immediately.**

[1] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 10).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

## I. Factual Background and Procedural History

Petitioner is a citizen of Mongolia who was admitted to the United States as a non-immigrant visitor on or about September 3, 2025, with authorization to remain in the United States until March 2, 2026. (Doc. 1, at Ex. 2, at 2). On February 28, 2026, U.S. Citizenship and Immigration Services received an asylum application that included Petitioner as a derivative applicant. (Doc. 1, at 11-12). On March 30, 2026, Petitioner appeared at the Asylum Office for her scheduled interview. (*Id.* at 12). The Asylum Office referred the application to immigration court without denying it. (*Id.*) Petitioner has properly appeared for every obligation imposed upon her. (*Id.*) Petitioner has no criminal history. (Doc. 11, at Ex. 2, at 3).

On May 14, 2026, a deputy from the McIntosh County Sheriff's Office in Oklahoma stopped a van in which Petitioner was riding as a passenger. (*Id.* at 2). The deputy noted the van's California license plate and stopped the van for "for failure to maintain lane and speeding." (*Id.*) Petitioner provided the deputy with her California ID, and the deputy contacted an ICE officer. (*Id.*) The ICE officer authorized Petitioner's arrest for an immigration violation, and Petitioner was arrested and transported to the Sequoyah County Jail. (*Id.*) The EOIR record of the incident identifies the event type as "287(g) Program Activities." (Doc. 1, at Ex. 1, at 2). No warrant or Notice to Appear ("NTA") was issued or served on the day of Petitioner's arrest. (*See* Doc. 11, at Exs. 1, 3). The incident narrative does not indicate any reason to believe Petitioner was likely to escape before a warrant could be obtained. (*Id.* at Ex. 2, at 2). Petitioner was transferred to an ICE detention facility on May 21, 2026, seven days after the warrantless arrest. (*Id.*) That day,

ICE issued a warrant and an NTA, initiating removal proceedings and charging Petitioner as removable for remaining in the United States beyond the authorized date. (*Id.* at Exs. 1, 3). Petitioner was served with the warrant and the NTA on the same day. (*Id.*)

On June 30, 2026, Petitioner conceded removability. (Doc. 1, at Ex. 11, at 3). On July 8, 2026, an immigration judge sustained the charges in the NTA and designated Mongolia as the country for removal.[3] (*Id.* at 5). On July 22, 2026, Petitioner filed an Application for Asylum and Withholding of Removal as a principal applicant. (*Id.* at Ex. 12, at 12-24).

At a custody hearing on June 4, 2026, an immigration judge denied bond because Petitioner "did not establish not a flight risk." (*Id.* at Ex. 4, at 2). Petitioner appealed the denial of bond to the Board of Immigration Appeals ("BIA") on June 18, 2026, and it remains pending. (*Id.* at Ex. 14, at 2). On June 22, 2026, the immigration court issued a memorandum detailing why bond was denied under BIA precedent. (*Id.* at Ex. 5). On July 13, 2026, Petitioner requested a second custody hearing, and it was granted and scheduled for August 6, 2026. (*Id.* at Ex. 8, at 2). An immigration judge again denied bond because Petitioner "did not establish not a flight risk." (*Id.* at Ex. 6, at 2). On August 13, 2026, Petitioner also appealed this denial of bond to the BIA, and it remains pending. (*Id.* at Ex. 14, at 2). On August 17, 2026, the immigration court issued a memorandum explaining why Petitioner "did not satisfy her burden to demonstrate materially changed

---

[3] This is not a removal order as the order contemplates that the non-citizen will file further applications for relief and "[i]f a properly completed application for relief is timely filed, the court will schedule a master calendar hearing to discuss any preliminary matters and to schedule an individual merits hearing." (Doc. 1, at Ex. 11, at 5).

circumstances that mitigate her risk of flight" under BIA precedent. (*Id.* at Ex. 7, at 3). Petitioner speaks Mongolian and does not speak or understand English. (Doc. 12, at Ex. 1, at 1). A Mongolian interpreter was unavailable at the August 6 bond hearing, and Petitioner's separate immigration counsel agreed to proceed without one. (*Id.* at 2).

Petitioner filed the instant Petition on August 25, 2026. (Doc. 1). An immigration hearing on the merits has been continued multiple times, including because of Petitioner's poor health. (Doc. 12, at Ex. 1, at 6). EOIR Automated Case Information indicates that the case is pending and currently no future hearings are scheduled. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Nov. 18, 2026). Thus, there is no final order of removal.

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises three grounds for relief:

(1) Petitioner's detention is unlawful because she was arrested without a warrant, "which 8 U.S.C. § 1226(a) makes a condition of discretionary detention." (Doc. 1, at 16-18).

(2) "Neither custody proceeding afforded a constitutionally adequate, individualized determination" because:

(a) a Mongolian interpreter was not provided at the August 6 bond hearing, (*id.* at 18-20);

(b) the orders denying bond do not sufficiently identify the reason for the denial, and the detailed memorandums were issued after the appeals were already filed, (*id.* at 18, 20-21);

(c) the evidentiary record could not support the finding of flight risk as a matter of law, (*id.* at 18, 22-23); and

(d) the bond hearings improperly placed the burden on Petitioner to disprove flight risk, (*id.* at 18, 23-24).

(3) Continued detention is unconstitutionally unreasonable and "no longer serves the regulatory purpose that justifies it" under the four-factor test from *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). (*Id.* at 24-25).

As relief, Petitioner requests immediate release, or, alternatively, "a new custody hearing within a fixed and short period before a different Immigration Judge, with a sworn Mongolian interpreter provided, at which the Government bears the burden of justifying detention by clear and convincing evidence and a statement of reasons is entered at the conclusion of the hearing." (*Id.* at 28). Petitioner also asks the Court to "[o]rder that Respondents not transfer Petitioner outside this District, or remove her from the United States, pending resolution" of the Petition.[4] (*Id.*)

In opposition, Respondents argue that (1) "an arrest warrant was issued and was served upon her the day that she was taken into ICE custody," (Doc. 11, at 6-7); (2)

[4] "It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Abedi v. Carter*, --- F.4th ----, 2026 WL 3149141, at *11 (10th Cir. Oct. 21, 2026) (quoting *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)). Moreover, the decision regarding where to detain non-citizens awaiting removal proceedings is a discretionary power of the Secretary of DHS, 8 U.S.C. § 1231(g)(1), which this Court lacks jurisdiction to review. 8 U.S.C. § 1252(a)(2)(B)(ii). *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (observing that "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal" and holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief"). Therefore, the undersigned concludes the Court does not have jurisdiction to prohibit Petitioner's transfer to another ICE facility.

The undersigned also recommends that Court should not enter an order enjoining Petitioner's removal. Petitioner has not alleged facts sufficient to show "the order is necessary or appropriate in aid of jurisdiction and agreeable to the usages and principles of law." *Abedi*, 2026 WL 3149141, at *13.

"Petitioner is not entitled to release even if there were flaws in her original arrest," (*id.* at 7); (3) "Petitioner has already received two bond determination hearings, and therefore is not entitled to additional relief," (*id.* at 7); (4) "Petitioner fails to show any constitutional infirmity in the bond hearing," (*id.* at 8); and (5) "her detention is rationally related to legitimate government interests," (*id.* at 13).

Petitioner replied, arguing that (1) "[t]he warrant Respondents produced is dated seven days after the arrest," (Doc. 12, at 1); (2) "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)," (*id.* at 2); (3) Respondents "do not assert that Petitioner was likely to escape before a warrant could be obtained," (*id.*); (4) the bond hearings were constitutionally defective, (*id.* at 2-6), and (5) Respondents have failed to supply a full record, including "any Form I-247 or I-247A detainer; the Sequoyah County booking, custody, and transfer records for May 14 through May 21, 2026; the call, dispatch, and authorization records for the May 14 encounter; any designation, training, or certification record under 8 U.S.C. § 1357(g) for the arresting officer; or any recording of the June 4, 2026 custody hearing," (*id.* at 8).[5]

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-

[5] Petitioner asks for the record to be expanded. (Doc. 12, at 8). The undersigned finds that the record is sufficient for the Court to rule on the Petition.

related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. Respondents Exceeded Their Warrantless Arrest Authority in Violation of the INA and Its Regulations.

### A. Legal Framework for Immigration Charges and Arrests

DHS may begin removal proceedings against a non-citizen who "is living in the United States without authorization" under § 1229(a) of the INA through an NTA. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (citing 8 U.S.C. § 1229(a)). The INA requires that a non-citizen who is placed in § 1229(a) removal proceedings receive written notice of the proceedings via an NTA. *See* 8 U.S.C. § 1229(a)(1) ("In removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the [non-citizen]."). The Notice acts as a charging document informing the non-citizen of the specific charges against her and outlining their legal and factual basis. *See Jimenez-Perez v. U.S. Att'y Gen.*, 817 F. App'x 676, 680 (11th Cir. 2020) ("An immigration court is vested with jurisdiction to conduct removal proceedings upon the filing of a charging document. An NTA is a charging document.") (citation omitted) (internal quotation marks omitted).

"The INA further provides that DHS may arrest and detain" non-citizens under § 1226(a) "pending a decision on whether [they are] to be removed from the United States." *Guzman Chavez*, 594 U.S. at 527 (citing 8 U.S.C. § 1226(a)). DHS may detain a non-citizen "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time

removal proceedings are completed, . . . under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1); *see also* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, [a non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States.").

The warrant must be issued before the non-citizen's arrest. *See* § 1226(a); *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (Section 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the [non-citizen's] arrest.") (quoting § 1226(a)); *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023) (explaining that § 1226 "is not even triggered unless an arrest warrant is issued," and "the subsequent provisions giving the Attorney General discretion to detain or release the arrested [non-citizen] are likewise not triggered" unless the non-citizen has "been arrested on a warrant") (internal quotation marks omitted).

Without a warrant, federal immigration officers "have more limited authority" to arrest a non-citizen. *Arizona v. United States*, 567 U.S. 387, 408 (2012). In such circumstances, federal immigration officers "may arrest [a non-citizen] for being 'in the United States in violation of any immigration law or regulation'. . . only where the [non-citizen] 'is likely to escape before a warrant can be obtained.'" *Id.* (quoting 8 U.S.C. § 1357(a)(2)) (alteration in original omitted). To make a warrantless arrest under § 1357(a)(2), an officer must have "reason to believe" both that the non-citizen is in the United States in violation of immigration law and that the non-citizen is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2); *see* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has

reason to believe that the person is likely to escape before a warrant can be obtained.”). After a warrantless arrest, a detainee must be examined by an immigration officer, and a custody determination must be made within 48 hours of arrest. 8 C.F.R. § 287.3. The custody determination may result in issuance of an NTA and a warrant if the examining officer believes continued detention is justified. *Id.* at § 287.3(d).

**B. Petitioner’s May 14 Arrest By a McIntosh County Deputy Sheriff Was an Unjustified, Warrantless ICE Arrest.**

Petitioner was arrested and detained by a McIntosh County deputy sheriff on May 14, 2026, without a warrant. (Doc. 11, at Ex. 2, at 2). The NTA and ICE’s I-200 Warrant for Arrest of Alien arrest were not issued until May 21, seven days *after* Petitioner was arrested. (*Id.* at Exs. 1, 3). Respondents contend that the arrest warrant “was issued and served upon her the day that she was taken into ICE custody” and thus her detention is lawful. (Doc. 11, at 6). Respondents’ assertion is contradicted by the record and applicable law.

The EOIR record identifies Petitioner’s arrest incident as “Event Type: 287(g) Program Activities.” (Doc. 1, at Ex. 1, at 2). This indicates that the arrest was pursuant to an agreement under 8 U.S.C. § 1357(g) – § 287(g) of the INA – under which “DHS is authorized to enter into written agreements with state and local jurisdictions, allowing specially trained state or local officers to perform specific functions related to the investigation, apprehension, or detention of noncitizens, under federal supervision.” *United States v. Oklahoma*, 739 F. Supp. 3d 985, 1003 (W.D. Okla. 2024), *appeal dismissed as moot*, No. 24-6144, 2025 WL 1993431 (10th Cir. Mar. 25, 2025). Indeed, the

incident narrative for the May 14 arrest is consistent with an ICE agreement with local law enforcement: a McIntosh County deputy sheriff conducting a traffic stop on a vehicle in which Petitioner was a passenger contacted an ICE officer who authorized Petitioner's arrest for an immigration violation. (Doc. 1, at Ex. 1, at 3). Petitioner was not arrested by local law enforcement for any non-immigration purpose.

"It is well established that an officer acting with a federal task force is a federal officer and, therefore, acts under color of federal law." *Robinson v. Sauls*, 2019 WL 12338303, at *3 (N.D. Ga. Sep. 16, 2019). *See Arias v. U.S. Immigr. & Customs Enf't Div. Dep't Homeland Sec.*, 2008 WL 1827604, at *14 (D. Minn. Apr. 23, 2008) (holding that the defendant cities and city officials acted under color of federal law when assisting in the planning and execution of a federal operation). "Moreover, an administrative detainee held by local officials pursuant to [a § 1357(g)] agreement remains under ICE custody and control." *C.F.C. v. Miami-Dade County*, 349 F. Supp. 3d 1236, 1256 (S.D. Fla. 2018). Accordingly, when the McIntosh County deputy sheriff arrested Petitioner for an immigration violation under color of federal law, Petitioner was arrested by ICE, even if she was not transferred from the local jail to an ICE-owned facility until seven days later. It is undisputed that this arrest was made without a warrant, and Respondents provide no justification for the delay in issuing a warrant at the time of Petitioner's arrest by the McIntosh County deputy sheriff.

Petitioner asserts, and Respondents do not contest, that "the warrantless-arrest exception does not apply." (Doc. 1, at 17). Petitioner points out that nothing in the arrest narrative supports a warrantless arrest: Petitioner has no criminal history, Petitioner is not

an enforcement priority, and Petitioner had a pending asylum application. (*Id.*) And Respondents offer no evidence or argument that they had reason to believe Petitioner was likely to escape before a warrant could be obtained for her arrest. The undersigned therefore concludes that the warrantless arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8.

To the extent Respondents argue that the subsequently issued warrant cures the warrantless arrest, the undersigned disagrees. *See Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1226 (D. Colo. 2025) ("[I]ssuing post hoc warrants once plaintiffs had already been unlawfully arrested does nothing to cure the initial statutory violation" and holding otherwise would "vitiate[] §1357(a)(2)'s two-pronged probable cause requirement, which is aimed precisely at preventing such unrestrained immigration enforcement actions."); *Alfaro v. Mullin*, 831 F. Supp. 3d 177, 184 (E.D.N.Y. 2026) (finding that "[p]ost-arrest issuance of an administrative arrest warrant and notice to appear does not cure the illegal arrest of Petitioner"); *Lazo v. Rasper*, 2026 WL 3319784, at *2 (D. Colo. Nov. 3, 2026) ("Courts in this district have rejected the notion than an I-200 warrant issued either after or concurrent with an arrest made without an assessment of individual flight risk transforms an unlawful warrantless arrest into a lawful warranted one.") (emphasis and quotations omitted).

## V. Because ICE Failed To Comply With Regulations Protecting Fundamental Rights, the Arrest Must Be Invalidated.

In *Abedi v. Carter*, the Tenth Circuit adopted a test for *per se* prejudice when an agency violates due process by failing to comply with its own regulations. "'[W]hen an

agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation.' . . . [I]n such cases, 'failure to comply will merit invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced the complaining party.'" *Abedi v. Carter*, --- F.4th ----, 2026 WL 3149141, at *23 (10th Cir. Oct. 21, 2026) (quoting *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010)). Applying this test, the Tenth Circuit held in *Abedi* that ICE's failure to promptly provide an informal interview upon the petitioner's re-detention from an order of supervision, as required by 8 C.F.R. § 241.13, amounted to a due process violation that entitled the petitioner to declaratory and habeas relief. *Id.* at *14, 21, 24. The undersigned finds that the reasoning of *Abedi* is applicable here.

As discussed above, detention under 8 U.S.C. § 1226(a) is unlawful unless an arrest warrant is issued prior to the non-citizen's arrest. *See Jennings*, 583 U.S. at 302 (holding that § 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the [non-citizen's] arrest.") (quoting § 1226(a)). This statutory right is protected by 8 U.S.C. § 1357(a)(2) and by 8 C.F.R. § 287.8(c)(2)(ii), which require either a warrant for arrest or a justification for an exception to the warrant requirement. The statutes and regulations protect a non-citizen's due process rights by preventing erroneous or arbitrary deprivations of liberty and by providing notice. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.") (citation modified). Moreover, "[t]he 'reason to believe' requirement [of § 1357(a)(2) and 8 C.F.R.

§ 287.8(c)(2)(ii)] is the equivalent of the constitutional requirement of probable cause." *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026) (citation modified). Indeed, the *Abedi* Court made a comparison to the concerns underlying the regulation under consideration in that case and the requirements for a lawful arrest, stating,

> [f]urthermore, just as the police cannot permissibly arrest a suspect unless they have reason to believe they have probable cause, *see Gerstein* [*v. Pugh*], 420 U.S. [103,] 120 n.21 [(1975)], immigration officials cannot permissibly revoke a release granted under § 241.13 unless they have reason to believe either that the noncitizen violated the conditions of his release or "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i).

*Abedi*, 2026 WL 3149141, at *20.

Here Petitioner was deprived of her liberty at the May 14 arrest without notice or justification, which is particularly problematic when Petitioner does not speak or understand English. (Doc. 1, at Ex. 1, at 2). ICE failed to comply with its own warrant-requirement statutes and regulations, which protect fundamental statutory and constitutional rights. That failure constitutes a due process violation that merits invalidation of the arrest and the subsequent detention "without regard to whether the alleged violation has substantially prejudiced the complaining party" and entitles Petitioner to habeas relief. *Abedi*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *23.

Contrary to the Respondents' suggestion, (*see* Doc. 11, at 7), this result is not barred by the Supreme Court's decision in *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149 (1923) – a decision which predates the INA itself and thus the statutes and regulations at issue here. In *Bilokumsky,* the Supreme Court affirmed the denial of habeas relief, holding that "[i]rregularities on the part of the government official prior to, or in connection with, the

arrest would not necessarily invalidate later proceedings in all respects conformable to law." *Id.* at 158. In *Bilokumsky* the Government did issue a warrant prior to the petitioner's arrest: the irregularity was the use of the habeas petitioner's uncounseled admission of alienage to support the arrest warrant. *Id.* at 155-58. The Court specifically observed that

> [i]t may be assumed that one under investigation with a view to deportation is legally entitled to insist upon the observance of rules promulgated by the Secretary pursuant to law. But no rule is shown which prohibits interrogation without apprising the person under investigation that he is entitled to refuse to answer and to have counsel. The examination here complained of was conducted before there was an application for the warrant of arrest. There is neither in rule 22, subdivision 3, which relates to the application for a warrant, nor elsewhere in the rules, any provision which deals with interrogation prior to the hearing.

*Id*. at 155-56. Thus, the government's irregular conduct in *Bilokumsky* did not violate any applicable statutes or regulations.

By contrast, in *Abedi*, the Tenth Circuit used its *per se* prejudice test to distinguish "mere procedural irregularities" from failures to comply with regulations protecting fundamental rights. *Abedi*, 2026 WL 3149141, at *24 (quoting *Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959)). The *Abedi* Court acknowledged that

> [t]he Supreme Court has clarified . . . "that not every promulgated regulation is of such a nature that a violation should invalidate agency action." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 176 (3d Cir. 2010). But the Court has explained that, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). And "[a] court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *United States v. Caceres*, 440 U.S. 741, 749 (1979). Thus, for example, the Court has "held invalid a deportation ordered on the basis of statements which did not comply with the Immigration Service's rules requiring signatures and oaths, finding

> that the rules were designed 'to afford [the noncitizen] due process of law' by providing 'safeguards against essentially unfair procedures.'" *Id.*

2026 WL 3149141, at *23 (citation modified). In the instant case, Respondents have failed to abide by their own statutes and regulations requiring an arrest warrant or a justified exception to a warrant, which are designed to protect non-citizens' due process rights. Accordingly, *Bilokumsky* is distinguishable and does not bar habeas relief here.

Without an arrest warrant issued at the time of arrest or any evidence that an exception to the warrant was applicable, Petitioner's continuing detention is unlawful because it has no basis: she has never been properly detained under § 1226(a) or any other statute. Therefore, the undersigned finds that Petitioner is in custody in violation of the laws of the United States, 28 U.S.C. § 2241(c)(3), and she is entitled to habeas relief.

## VI. Immediate Release Is the Proper Remedy.

Having determined that the warrantless arrest was unlawful and entitles Petitioner to habeas relief, the undersigned must determine the proper remedy. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quotation marks and citations omitted).

Before *Abedi*, several judges in this district concluded that release is the appropriate remedy for a warrantless arrest, particularly where Petitioner has not been afforded due process. *See, e.g., Nosirov v. Gantt*, No. CIV-26-1036-J, 2026 WL 2255073 (W.D. Okla. Aug. 5, 2026); *Li v. Gantt*, No. CIV-26-909-R, 2026 WL 2045005, at *2 (W.D. Okla. Jul. 15, 2026) (granting release where "[n]othing in the record indicates Petitioner was properly

arrested pursuant to a warrant or that conditions were present which might have justified his warrantless arrest."); *Kunner v. Grant*, No. CIV-26-229-R, Doc. No. 23, at 1, 7 (W.D. Okla. Jul. 7, 2026) (finding that "Petitioner's immediate release is appropriate" based on warrantless arrest claim despite having already received a bond hearing); *Aguilar-Huanga v. Figueroa*, No. CIV-26-115-J, 2026 WL 821474 (W.D. Okla. Mar. 25, 2026) (finding that a belatedly-filed and heavily redacted warrant did not preclude release for petitioner raising warrantless arrest claim); *Singh v. Bondi*, No. CIV-26-43-J, 2026 WL 483482 (W.D. Okla. Feb. 20, 2026); *but see Perdigon v. Gantt*, No. CIV-26-949-R, 2026 WL 2428826 (W.D. Okla. Aug. 19, 2026) (denying habeas relief for warrantless arrest claim where petitioner had already had a bond hearing, citing out-of-circuit cases).[6] Given the

[6] Many district courts have found that the Government's failure to comply with the § 1226(a) warrant requirement prior to the arrest entitles the petitioner to habeas relief in the form of immediate release from custody. *See Sergio P. v. Bondi*, 2026 WL 497290, at *3 (D. Minn. Feb. 23, 2026) (holding that "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)" and that "[r]elease is an available and appropriate remedy for detention that lacks a lawful predicate") (citation modified); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Petitioners' detentions are improper because there is no evidence in the record that they were arrested pursuant to a warrant. Since the Government did not comply with the plain language of section 1226(a), their immediate release is justified."); *Emilio A.L. v. Warden Cent. Valley Det. Facility*, 2026 WL 2475740, at *3-5 (E.D. Cal. Aug. 24, 2026) ([A]bsent an exception, an administrative warrant must be issued prior to a noncitizen's arrest."); *Quezada-Estrada v. Lyons*, 2026 WL 1361880, at *5 (D. Colo. May 15, 2026) ("Fundamentally, Respondents may not detain first and justify later.") (collecting cases); *Carlos D. v. Bondi*, 2026 WL 636685, at *3 (D. Minn. Mar. 6, 2026) (granting release when the warrant was executed several hours after the petitioner's arrest); *Eslid. B.G. v. Bondi*, 2026 WL 734992, at *6 (D.S.D. Mar. 16, 2026) ("A bond hearing presupposes lawful detention authority under § 1226. Where that authority has not been invoked or established, ordering a bond hearing would treat the absence of statutory power as a mere procedural irregularity rather than a substantive defect.") (citations and quotation omitted).

Tenth Circuit's recent direction, the undersigned concludes that the appropriate remedy for Petitioner's warrantless arrest is immediate release.[7]

## VII. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Court find Petitioner was arrested and detained in violation of 8 U.S.C. § 1226(a) and § 1357(a)(2) and 8 C.F.R. § 287.8 and accordingly **GRANT** the Petition, (Doc. 1). The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, subject to an appropriate order of supervision. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order. The Court should further enjoin Respondents from re-detaining Petitioner absent compliance with 8 U.S.C. §§ 1226(a), 1357(a) and 8 C.F.R. § 287.

**The Court advises the parties of their right to object to this Report and Recommendation by November 25, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[8] The Court further advises the parties that failure to make timely objection to

---

[7] Having determined that Petitioner is entitled to release pursuant to Ground One, the undersigned recommends the Court decline to "proceed to Grounds Two and Three." (Doc. 1, at 18).

[8] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be

this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 19th day of November, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

in every instance – particularly where strict application would undermine the habeas review process").